UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVID LAHOTI,

          Plaintiff,

  v.

VERICHECK, INC.,

          Defendant.

CASE NO. C06-1132JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on cross-motions for summary judgment (Dkt. ## 25, 30). The court has considered the papers filed in connection with the motions and has heard argument from counsel. For the reasons stated below, the court GRANTS in part and DENIES in part Defendant's motion and DENIES Plaintiff's motion.

## II. BACKGROUND

Defendant Vericheck, Inc. ("Vericheck") is in the business of providing check verification services, check collection services, wireless payments, and the like. Sec. Hannah Decl. (Dkt. # 26) ¶ 2. Chief Executive Officer ("CEO") Jerry Hannah, who

ORDER – 1

purchased the company in 1995, attests that Vericheck has been in business since December 1989, and has used the alleged mark VERICHECK (or, "the mark") since that time. Id. at ¶ 1. Vericheck attempted to register the mark with the United States Patent and Trademark Office ("PTO"), but was unable to because an Arizona company – that also provides check verification services – successfully registered VERICHECK as a word mark in 1975. Id. at ¶ 8; Moeller Decl. (Dkt. # 32), Exs. 7, 8. According to Mr. Hannah, his company has maintained an internet presence at its website "www.vericheck.net" since 1999 and began offering its services online about one year later. Id. at ¶ 2. The company also registered domain names, "vericheck.org," "vericheck.cc," "vericheck.us," and "vericheck.biz," – some of which appear to reroute customers to Vericheck's homepage. Id.; Sec. Jost Decl. (Dkt. # 28), Ex. A. On August 31, 2001, the company successfully registered a service mark with the State of Georgia, described as "a depiction of a check mark over the word 'vericheck.'" Sec. Jost Decl. ¶ 3, Ex. B.

Plaintiff David Lahoti is a self-proclaimed "Internet entrepreneur." Lahoti Decl. (Dkt. # 31) ¶ 1. He has registered thousands of domain names. Supp. Jost Decl. (Dkt. # 23), Ex. K. Mr. Lahoti states that he prospectively registers domain names of services he "might offer" based on his "ideas for new ventures." Lahoti Decl. at ¶ 7-8. According to Mr. Lahoti, the notion of registering domain names beginning with "veri," occurred to him in the late 1990's when he saw a business opportunity to provide online payment verification services for a burgeoning internet-based marketplace. Id. at ¶ 9. To that end, Mr. Lahoti contends that he registered domain names "veripay.com" and "vericharge.com" as early as 1998, id. at ¶¶ 9, 10, as well as over a dozen domain names beginning with "veri" sometime thereafter. He would have registered "vericheck.com" (or, the "Domain Name") in 1998, had a Canadian company not already acquired it.

ORDER – 2

After tracking the Domain Name for five years, Mr. Lahoti finally registered vericheck.com in March 2003.  He contends that he was not aware of Vericheck's existence at the time of registration.  Id. at ¶ 11.

Under Mr. Lahoti's ownership, the sole function of the vericheck.com website was to redirect internet users to a different website under the control of Oversee.net, which in turn, provided internet search services.  Id. at ¶ 16-18; id. at ¶ 15 ("My only use of the domain name . . . was posting eight (8) lines of HTML code onto a website . . . .").  Mr. Lahoti made money based on the traffic his site directed to Oversee.net.  Id. at ¶ 22.  He has never offered or sold any check verification related services.  Id. at ¶ 25.

Vericheck contends that the search results on Oversee.net's website pointed consumers to Vericheck's competitors.  Jost Decl., Ex. H.  Mr. Hannah further contends that Mr. Lahoti's online presence using vericheck.com has engendered customer confusion.  Sec. Hanna Decl. ¶ 10 (stating that the company receives 8-10 calls per week from customers who are confused by Mr. Lahoti's website); Goretsky Decl. ¶¶ 5, 6 (stating that USA ePay – a company that sells Vericheck's services – received similar complaints of customer confusion).

Mr. Hannah contends that, like Mr. Lahoti, he and other Vericheck representatives attempted to register vericheck.com for several years.  According to Mr. Hannah, he attempted to secure rights to the Domain Name from the prior owner, without success.  After the Domain Name transferred to Mr. Lahoti, Mr. Hannah attests that "true negotiation virtually ceased."  Sec. Hannah Decl. ¶ 9.  Mr. Hannah further declares that Mr. Lahoti expressed a willingness to sell the Domain Name in August 2005 for $48,000, and for $100,000 in January 2006.  Id.  Although Mr. Hannah provides no documentary evidence to this effect, a CEO of one of Vericheck's business partners, Ben Goretsky of USA ePay, Inc., corroborates Mr. Hannah's contention that the Domain Name could be

ORDER – 3

purchased for the right price. Goretsky Decl. (Dkt. # 27) ¶ 4, Ex. A. Attached to Goretsky's declaration are copies of emails in which representatives of Mr. Lahoti's affiliates[1] demand $72,500 in February 2004 and $48,000 in August 2005 to transfer the Domain Name. Id. In the first email correspondence, Mr. Lahoti's representative states that the company is "reserving" vericheck.com "for future branding of a specific venture . . . ." Id. The email author goes on to state that if USA ePay wished to purchase the Domain Name within eight days of the date of the email, the price would be $72,500. Id. In an August 4, 2005 email, the offer came with a similar time constraint: "it would be $48,000 if you can confirm with us by August 11." Id. Mr. Lahoti denies that *he* ever offered to sell the Domain Name, but does not dispute that one of his "associates" had email communications with Mr. Goretsky. Sec. Lahoti Decl. (Dkt. # 42) at ¶ 29.

In June 2006, Vericheck filed a complaint with the National Arbitration Forum ("NAF") pursuant to the Uniform Domain-Name Dispute-Resolution Policy[2] seeking an order transferring vericheck.com to the company. On August 2, 2006, NAF ordered transfer of the Domain Name to Vericheck. Sec. Jost Decl., Ex. I. On August 10, 2006, Mr. Lahoti filed the instant action for declaratory relief challenging NAF's decision.[3] Mr. Lahoti now requests that the court enter a declaratory judgment that his use of the

---

[1] Mr. Lahoti does not dispute that the email addresses ending in "Omegaworks.com" and "Inerspectrum.com," which appear in the email correspondence attached to Goretsky's declaration, refer to companies with which he is affiliated. See Sec. Lahoti Decl. (Dkt. # 42) ¶ 29.

[2] The Uniform Domain-Name Dispute-Resolution Policy, available at www.icann.org/dndr/udrp/policy.htm, is incorporated into all domain-name registration agreements where a second-level domain name issues to a member of the public.

[3] Mr. Lahoti brings the action for declaratory relief pursuant to 15 U.S.C. § 1114(2)(D)(v), which allows a registrant whose domain name has been suspended, disabled, or transferred, to file a civil action to establish that his use of the domain name is lawful.

ORDER – 4

Domain Name does not contravene the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), or any other (unspecified) provision of the Lanham Act, 15, U.S.C. § 1501, *et seq*.  Compl. at 5-6.  In its answer, Vericheck pleads the following counterlclaims: violation of the ACPA, Lanham Act claims of false designation of origin, 15 U.S.C § 1125(a), common law unfair competition and trademark infringement, and violation of Washington's Consumer Protection Act ("CPA"), RCW § 19.86.020.  Ans. ¶¶ 13-41.  Vericheck prays for transfer of the domain name, statutory damages, and attorneys' fees.

### III.  DISCUSSION

**A.     Legal Standard**

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law.  Celotex, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by producing evidence that negates an essential element of the non-moving party's case, or (2) after suitable discovery, by showing that the non-moving party does not have enough evidence of an essential element to carry its burden of persuasion at trial.  Id. at 322-23; see also Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).  If the moving party meets its burden, the opposing party must present evidence to support its claim or defense.  Cline v. Indust. Maint. Eng'g. & Contracting Co., 200 F.3d 1223, 1229 (9th Cir. 2000).  For purely legal questions, summary judgment is appropriate without deference to the non-moving party.

In a declaratory judgment action, "the party that has the burden of proof is determined not by their designation as plaintiff or defendant, but by the nature of the relief sought." Burlington No. R.R. Co. v. Hyundai Merch. Marine Co., Ltd., No. 96-9123, 1999 WL 1122998, *5 (C.D. Cal. June 18, 1999) (citing Pac. Portland Cement Co. v. Food Mach. & Chem. Corp., 178 F.2d 541, 546 (9th Cir. 1949)). The parties do not dispute that Vericheck bears the burden of proof at trial on its substantive claims. See Union Pac. Ins. Co. v. Safety Kleen Corp., No. 89-3119, 1993 WL 505393, *4 (N.D. Cal. Nov. 10, 1993) ("Where the substantive issue in a declaratory judgment action is one on which the defendant would bear the burden of affirmative proof were the action brought in traditional form, the underlying . . . assignment of burdens is not altered.").

**B.     Anti-Cybersquatting Consumer Protection Act**

The ACPA, which Congress incorporated into the Lanham Act in 1999, sets forth the elements of a cybersquatting claim. To prevail, Vericheck must prove that it holds a distinct mark, that Mr. Lahoti had a "bad faith intent to profit" from the mark, and that Mr. Lahoti "register[ed], traffic[ked] in, or use[d][4] a domain name" that is identical to, or confusingly similar to that mark. See 15 U.S.C. § 1125(d)(1)(A)(i)-(ii). The ACPA protects both federally-registered marks as well as unregistered marks. DaimlerChrysler v. The Net Inc., 388 F.3d 201, 205 (6th Cir. 2004) (citing Two Pesos Inc. v. Taco Cabana, 505 U.S. 763, 768 (1992)); see also 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25:78 (4th ed.). Because there is no dispute that vericheck.com and the VERICHECK mark are identical or confusingly similar, the court focuses on the elements of distinctiveness and bad faith.

---

[4]Unlike a trademark infringement claim, a claim under the ACPA does not require the claimant to prove that the alleged cybersquatter made *commercial* use of the mark. See Bosley Medical Institute, Inc. v. Kremer, 403 F.3d 672, 680-81 (9th Cir. 2005).

ORDER – 6

1.     A Distinctive Mark

Mr. Lahoti argues that, at the time he registered vericheck.com,[5] Vericheck did not hold a distinct mark and thus, cannot satisfy an essential element of its ACPA claim. See 15 U.S.C. 1125(d)(1)(A)(ii)(I). Because the company does not hold a federally registered mark, Vericheck must prove that it has a protectable mark without the benefit of presumed validity that the court applies to registered marks. See Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 928 (9th Cir. 2005).

There are five categories of trademarks: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. Id. at 927. Word marks that are "'arbitrary' ('Camel' cigarettes), 'fanciful' ('Kodak' film), or 'suggestive' ('Tide' laundry detergent)" are inherently distinctive. Wal-Mart Stores v. Smara Bros., 529 U.S. 205, 210-11 (2000). These three categories are entitled to trademark protection because they "serve[ ] to identify a particular source of a product . . . ." Two Pesos, 505 U.S. at 768. A term is suggestive "if imagination or a mental leap is required in order to reach a conclusion as to the nature of the product being referenced." Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc., 198 F.3d 1143, 1147 (9th Cir. 1999). By contrast, "descriptive" marks simply "define a particular characteristic of the product in a way that does not require any exercise of the imagination." Yellow Cab, 419 F.3d at 927 (internal citation and quotation omitted). A descriptive mark receives trademark protection only when it establishes "secondary meaning" in the marketplace. Id. Generic marks receive no

---

[5]The record is somewhat unclear as to when Vericheck began using the mark, an issue to which Mr. Lahoti dedicates significant attention. The fact that Vericheck has been unable to provide a consistent and comprehensive picture of its use of the VERICHECK mark, however, need not be addressed at this juncture. The court is satisfied that Vericheck's use of the mark, at the very least, predates Mr. Lahoti's registration of the domain name as evidenced by its prior registration with the State of Georgia. To be sure, issues such as length-of-use may bear on the relative strength or weakness of the mark; however, as the court addresses in its subsequent discussion, the issue remains one for the trier-of-fact.

ORDER – 7

protection because they simply identify the product, rather than the source of the product. Id. (internal citation omitted). "Placement on the spectrum of distinctiveness does not end the enquiry as to the strength of a mark: it is only the first step. The second step is to determine the strength of this mark in the marketplace. That is, to ascertain its degree of recognition in the minds of the relevant customer class." 2 MCCARTHY §11.2.

On the spectrum of trademark protection, Mr. Lahoti places VERICHECK at the descriptive end,[6] while Vericheck places the mark at the arbitrary (or at worst, suggestive) end. Other than staking their respective claims along this spectrum, the parties do little to explain how this question of fact[7] is appropriate for resolution at the summary judgment stage. Indeed, the parties do not acknowledge the "hazy" line between descriptive and suggestive marks, 2 MCCARTHY § 11.66, nor do they cite the criteria that courts employ to differentiate between the two, e.g., Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 59 F.3d 902, 911 (9th Cir. 1995) (applying "imagination test" to determine whether mark was descriptive or suggestive). Vericheck essentially urges the court to find the mark inherently distinctive because the word has no common English meaning and because another company successfully registered the mark. Meanwhile, Mr. Lahoti contends that the mark is not distinct as a matter of law because it is merely

---

[6]The court does not construe Mr. Lahoti's one-time pairing of the term "generic" with "descriptive" as an attempt to argue that the VERICHECK is generic, and thus outside the realm of trademark protection. Lahoti's Mot. at 12 ("The Alleged Mark, VERICHECK is descriptive or general for a service of verification of checks."). Indeed, Mr. Lahoti's argument centers on the lack of secondary meaning, not genericness, id. at 12-14, and he appears to have dropped the notion in his later brief. Lahoti's Opp'n. at 12 ("The Alleged Mark, VERICHECK, is descriptive of check verification services.") Accordingly, the court declines to dedicate judicial resources to a discussion of whether VERICHECK is generic.

[7]Although the parties do not address the issue in their briefs, the court considers the categorization of a mark a question of fact. See Lane Capital Mgt. Inc. v. Lane Capital Mgt., Inc., 192 F.3d 337, 344 (2d Cir. 1999); see also 2 MCCARTHY § 11.3 (noting that the "vast majority" of courts consider distinctiveness a question of fact).

ORDER – 8

descriptive and lacks secondary meaning. Notably, Vericheck does not attempt to show why the mark is *not* descriptive, it merely reiterates that the mark is suggestive. To put it mildly, such discordant briefing is not particularly helpful to the court.

The court concludes that neither party has met their burden to show that Vericheck does or does not hold a distinct mark as a matter of law, and thus the issue remains one for trial. Mr. Lahoti's primary contention is that Vericheck fails to show that it holds a protectable mark because (a) it cannot prove secondary meaning, and (b) the field is already "crowded." Lahoti's Mot. at 11 (citing Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc., 856 F.2d 1445, 1449 (9th Cir. 1998) ("In a crowded field of similar marks, each member of the crowd is relatively weak in its ability to prevent use by others in the crowd.")). In support of his contention that the field is "crowded," Mr. Lahoti provides undisputed evidence that other companies use the VERICHECK mark or phonetic variations of the term "vericheck" in connection with services similar to or the same as those offered by Vericheck. E.g., Moeller Decl., Ex. 13 (website printout of Texas company "Verichek, Inc."); id. at Ex. 16 (website printout of Hawaiian company d/b/a/ "Vericheck"); id at Ex. 18 (website printout of Canadian company "Veri-Cheque, Ltd."). Mr. Lahoti also points to other permutations of the VERICHECK mark used by companies operating in unrelated industries. Id. at Exs. 20-25.[8]

Although third-party use may bear on whether the mark is relatively weak or strong, such use does not necessarily defeat Vericheck's contention that the mark is suggestive. Indeed, the fact that another company used "VERI-CHECK" in association

---

[8]The court notes that third-party use in connection with *unrelated* goods is likely irrelevant in determining relative strength or weakness of a mark. See Eclipse Ass'n, Ltd. v. Data Gen. Corp., 894 F.2d 1114, 1119 (9th Cir. 1990) (upholding trial court's exclusion of evidence related to third-party use of mark in unrelated industry on question of likelihood of confusion in trademark infringement action).

ORDER – 9

with an ultra-violet counterfeit money detector, id. at Ex. 25, may indicate that the term is something more than a description of check verification services. That is, the VERICHECK mark could denote a wide variety of products, and thus may require a consumer's imagination to connect the term to Vericheck's particular services. See Playtex Products, Inc. v. Georgia-Pacific Corp., 390 F.3d 158, 163 (2d Cir. 2004) (upholding finding that WET ONES is suggestive as it "could plausibly describe a wide variety of products"). Because a suggestive mark does not require Vericheck to prove secondary meaning, the court need not address Mr. Lahoti's alternate contention that Vericheck has not provided evidence of this fact. Accordingly, given that the question of distinctiveness is ordinarily for the trier-of-fact, and because the court concludes that a reasonable jury could find the mark suggestive, the court denies both parties' motions on this issue.

   2.   Bad Faith

Mr. Lahoti urges the court to conclude that he did not act in bad faith as a matter of law, and Vericheck urges the court to conclude that he did. Mr. Lahoti contends that he did not know about Vericheck when he registered vericheck.com, that he only learned of Vericheck's existence when the company contacted him to purchase the Domain Name, and that he always believed he had a legitimate right to own the Domain Name. Lahoti Decl. ¶¶ 23, 24, 26; Lahoti's Mot. at 14 (citing the ACPA's safe harbor provision, 15 U.S.C. § 1125(d)(1)(B)(ii)). Vericheck urges the court to infer an ill-motive based on Mr. Lahoti's prior run-ins with cybersquatting and trademark infringement claimants. Sec. Jost Decl., Exs. D, E. Vericheck also places emphasis on the fact that one of Mr. Lahoti's representatives offered to sell the Domain Name on more than one occasion.

ORDER – 10

Assuming that Vericheck held a distinct mark when Mr. Lahoti registered the Domain Name, the court considers the following nine factors in determining whether Mr. Lahoti has acted in bad faith:

(1) the trademark or other intellectual property rights of the person, if any, in the domain name;

(2) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(3) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(4) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(5) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(6) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(7) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(8) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(9) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

ORDER – 11

15 U.S.C. § 1125(d)(1)(B)(i)(I)-(IX). The factors are not exhaustive. Instead, "the most important grounds for finding bad faith are the unique circumstances of the case, which do not fit neatly into the specific factors" that Congress enumerated. Interstellar Starship Servs., Ltd. v. Epix, Inc., 304 F.3d 936, 946-47 (9th Cir. 2002) (internal citations and quotations omitted). In addition, the ACPA contains a safe harbor provision: "[b]ad faith . . . shall not be found in any case in which the court determines that the person believed and had a reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii).

Mr. Lahoti's conduct satisfies nearly all of the above-cited factors supporting a determination of bad faith. Mr. Lahoti admits that he has never used the Domain Name as a trademark. The Domain Name neither contains a variation of Mr. Lahoti's legal name, nor any other name commonly used to identify him. Mr. Lahoti has never used the Domain Name in connection with the bona fide offering of goods or services, nor does he use the website for a non-commercial or "fair use" purpose. Further, Vericheck provides evidence that, when active, Mr. Lahoti's website directed consumers to another site that, in turn, provided search results listing some of Vericheck's competitors. Mr. Lahoti does not dispute this fact. Moreover, Mr. Lahoti has registered thousands of internet domain names, some of which are identical to, or confusingly similar to, the distinctive marks of others.[9] Perhaps most significant, Mr. Lahoti's representative offered to sell vericheck.com on more than one occasion. Vericheck also contends that Mr. Lahoti used false or misleading information when he used the nondescript name "Admin Manager"

---

[9]Vericheck points to Mr. Lahoti's prior registration of domain names that incorporate the famous marks of others, such as, <nissan.org>, <ebays.com>, and <fredericks-of-hollywood-com>. Jost. Decl., Ex. E. Mr. Lahoti does not deny this history. E.g., Reply at 3 ("Defendant claims Plaintiff is a "cybersquatter" because some of his registered domain names (there are thousands) coincide with registered trademarks.").

ORDER – 12

when registering vericheck.com, making it difficult to find the owner of the Domain Name. Again, Mr. Lahoti does not appear to refute this contention.

Applying the balance of factors to the circumstances of this case, the court concludes that Mr. Lahoti acted in a bad faith attempt to profit, and that no reasonable jury could conclude otherwise.[10] Mr. Lahoti contends that he could not have acted in bad faith because the VERICHECK mark is not "well-known, but obscure." Lahoti's Reply at 2. In a similar vein, he claims that he could not have known of "the obscure Georgia entity" at the time he registered the Domain Name. Lahoti's Mot. at 19. As to the first contention, although the court would tend to agree that the mark is not *famous*, Mr. Lahoti's proclamation that the mark is obscure is entirely insufficient to conclude that it is beyond the reach of trademark protection. In any event, failure to definitively establish this one factor (because a jury question remains on distinctiveness) is not dispositive on the question of bad faith. Mr. Lahoti's second contention – i.e., that he did not know about Vericheck at the time he registered the domain name – likewise fails to defeat a finding of bad faith. Rather, evidence of bad faith may arise long after registration of the domain name. See Storey v. Cello Holdings, LLC, 347 F.3d 370, 386 (2d Cir. 2003) (remanding action where district court failed to consider post-registration efforts to sell the domain name as evidence of bad faith). Mr. Lahoti's thin arguments fail to demonstrate a genuine issue of fact for trial on the question of bad faith.

---

[10]The court notes, and neither party disputes, that lower courts (rather than juries) ordinarily make a determination of bad faith. See e.g., Pinehurst, Inc. v. Wick, 256 F. Supp. 2d 424, 430 (M.D.N.C. 2003) (finding bad faith on motion for summary judgment); Interstellar, 304 F.3d at 947 (reviewing district court's "findings" rendered on summary judgment on the question of bad faith); see also 15 U.S.C. § 1125(d)(B)(I) (directing "a court" to consider the nine factors in "determining whether a person has a bad faith intent").

ORDER – 13

Moreover, because the statutory factors strongly support a finding of bad faith, the court concludes that Mr. Lahoti does not qualify for the ACPA's safe harbor provision based solely on his declaration that he though he was acting lawfully. The provision applies only when the alleged cybersquatter both "believed and had *reasonable* grounds to believe that the use of the domain name was fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii) (emphasis added). As the Fourth Circuit noted, "[a]ll but the most blatant cybersquatters will be able to put forth at least some lawful motives for their behavior. To hold that all such individuals may qualify for the safe harbor would frustrate Congress' purpose by artificially limiting the statute's reach." Virtual Works, Inc. v. Volkswagen of Am., Inc., 238 F.3d 264, 270 (4th Cir. 2001). Accordingly, the court reserves for trial the question of whether Vericheck held a distinct mark at the time of Mr. Lahoti's registration of vericheck.com, but concludes that no triable issue exists on the question of bad faith.

## C.  Trademark Infringement

To prevail on its claims of false designation of origin, common law trademark infringement, and unfair competition (collectively, "infringement claims"),[11] Vericheck must show that it holds a protectable mark,[12] and that Mr. Lahoti made commercial use of a mark that is similar enough to cause confusion in the minds of consumers about the

---

[11] The familiar "likelihood of confusion" test is the standard of liability, whether the claim is one for unfair competition, false designation of origin, or infringement. See New West Corp. v. NYM Co. of California, Inc., 595 F.2d 1194, 1201 (9th Cir.1979) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical – is there a 'Likelihood of Confusion?'"); see also 4 MCCARTHY § 23:1 (same as to common law trademark infringement).

[12] The court has already concluded that material issues of fact remain on whether Vericheck holds a distinct mark, and it is therefore unnecessary to repeat that discussion here.

ORDER – 14

origin of the goods or services in question.  KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 117 (2004).

1. Commercial Use

Before the court proceeds to whether material issues of fact remain on the question of likely confusion, the court addresses Mr. Lahoti's contention that Vericheck's infringement claims fail as a matter of law because he never made commercial use of the mark.  15 U.S.C. § 1125(a)(1) (outlining liability for "any person" who "uses in commerce" a protected mark).  Mr. Lahoti is correct that mere registration of a Domain Name is insufficient to constitute "use[] in commerce" and therefore cannot be the subject of an infringement action.  See Lockheed Martin Corp. v. Network Solutions, Inc., 985 F. Supp. 949, 961 (C.D. Cal. 1997) ("The registration of a domain name, without more, does not amount to infringement of a mark similar to the name.").  Mr. Lahoti, however, has done more than simply warehouse vericheck.com; he directed consumers to another website that earned him income from sponsored search results.  More significantly, Mr. Lahoti's representatives offered to sell vericheck.com – the Domain Name of a website on which Mr. Lahoti had entered a mere 8 lines of code – for amounts that exceed the original registration fee.  The Ninth Circuit considers not only a successful sale, but an *attempt* to sell a domain name as constituting commercial use.  See Panavision Int'l, LP v. Toeppen, 141 F.3d 1316, 1325 (9th Cir. 1998) ("[Defendant's] commercial use was his *attempt to sell* the trademarks themselves.").  Evidence that Mr. Lahoti's representatives attempted to sell the Domain Name combined with Vericheck's undisputed evidence that Mr. Lahoti previously traded on the value of other's marks, see Sec. Jost Decl., Exs. D,

E,[13] satisfies the "commercial use" requirement of an infringement action. See Panavision, 141 F.3d at 1325-26 (considering defendant's past efforts to sell other domain names in evaluating whether commercial use is present).

    2.    <u>Likelihood of Confusion</u>

The court now turns to the remaining element of Vericheck's infringement claims, namely, whether Mr. Lahoti's use of the mark was likely to cause confusion in the minds of consumers. The following eight factors first announced in <u>AMF, Inc. v. Sleekcraft Boats</u>, 599 F.2d 341, 348-49 (9th Cir. 1979), guide the court's analysis:

    (1) the similarity of the marks;
    (2) the marketing channels used to promote the marks;
    (3) the relatedness of the goods or services promoted under the marks;
    (4) the strength of the plaintiff's mark;
    (5) evidence of actual confusion;
    (6) likelihood of expansion of either parties' product lines;
    (7) the degree of care a potential purchaser is likely to exercise; and
    (8) the defendant's intent in selecting the mark.

<u>Id.</u> In the context of the Web, the three most important <u>Sleekcraft</u> factors for determining likelihood of confusion are (1) similarity of the marks, (2) relatedness of the goods or services, and (3) the simultaneous use of the Web as a marketing channel. <u>Goto.com, Inc. v. Walt Disney Co.</u>, 202 F.3d 1199, 1205 (9th Cir. 2000).

The court concludes that neither party has shown as a matter of law whether consumers likely confuse vericheck.com with Vericheck's services. See <u>Levi Strauss & Co. v. Blue Bell, Inc.</u>, 778 F.2d 1352, 1355 n.5 (9th Cir. 1985) (noting that "the question of likelihood of confusion is routinely submitted for jury determination as a question of

---

[13]As one example, Vericheck attaches to counsel's declaration a copy of the Honorable Gary A. Feess's findings of facts and conclusions of law in <u>E-Stamp Corp. v. Lahoti</u>, No. 99-09287-GAF (June 12, 2002, C.D. Cal.), in which he finds that "Lahoti operates with a clear and undeniable profit motive. The evidence establishes that he traffics in domain names for profit." Jost Decl., Ex. D at 8.

ORDER – 16

fact"). On the one hand, it is undisputed that the VERICHECK mark and vericheck.com are identical (or confusingly similar) and that, generally, both Mr. Lahoti and Vericheck use the web as a marketing channel. Further, as the court has already discussed, Mr. Lahoti's intent in selecting the mark is suspect. On the other hand, questions remain concerning the strength of Vericheck's mark. Mr. Lahoti highlights evidence of third-party use as indicative of a weak mark, and points to the scant evidence with respect to Vericheck's actual use of the mark in its advertising materials. Further, Mr. Lahoti cites the self-serving nature of Vericheck's declarations on the subject of consumer confusion and the attendant hearsay issues involved. Although proof of actual confusion is not a prerequisite to an infringement claim, Vericheck's evidence provides an insufficient basis for the court to say as a matter of law that likelihood of confusion exists. Accordingly, the court denies both parties' motions on the issue.

**D.   Washington Consumer Protection Act**

To prevail on its CPA claim, Vericheck must show: (1) an unfair or deceptive act or practice; (2) occurring in the conduct of trade or commerce; (3) affecting the public interest; (4) injuring its business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered. Nordstrom, Inc. v. Tampourlos, 733 P.2d 208, 210 (Wash. 1987). Vericheck makes no attempt to apply these elements to the facts of this case, and dedicates less than a page to a discussion of its CPA claim. In any event, because issues of fact preclude the court from both determining whether the mark is inherently distinctive and whether there is a likelihood of customer confusion, the court declines to rule as a matter of law that Vericheck is entitled to summary judgment under Washington's CPA. See Seattle Endeavors, Inc. v. Mastro, 868 P.2d 120, 126 (Wash. 1994) (noting the "overlapping nature of proof in both trade name infringement cases and [CPA] violations" and considering, *inter alia*, likely confusion and strength of the mark in reviewing CPA claim).

ORDER – 17

## IV.  CONCLUSION

For the reasons stated, the court DENIES Mr. Lahoti's motion for summary judgment (Dkt. # 30) and DENIES in part and GRANTS in part Vericheck's motion (Dkt. # 25).  A bench trial is set for October 9, 2007 in this matter.

Lastly, the court DENIES as moot Mr. Lahoti's request to strike (Dkt. # 49) the late-filed amended Declaration of Mr. Hannah (Dkt. # 48), because the court did not rely on the submission.  For the same reason, the court declines Mr. Lahoti's request contained in his Reply brief to strike the declaration of Colin Smith (Dkt. # 39).

Dated this 30th day of August, 2007.

JAMES L. ROBART
United States District Judge

ORDER – 18